The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case number 422-0204 Hurlbert doing business at Sage Information Services versus Laura Edmonds in her official capacity. Would the appellant please state your name for the record? Joe Craven for appellant, your honor. Thank you. And for the appellee? Jane May for the appellee. Thank you. Thank you. You may proceed. Thank you, your honor. May it please the court. This matter comes before the court on a number of different FOIA issues, Freedom of Information Act issues, as a result of plaintiffs submitting a request for public records to defendant. Specifically requesting a tax map in shape file format from the county assessment office. In sum, this is not a case about whether or not the tax map is a public record. It's not a case about whether or not defendant maintains the tax map in the requested format. Frankly, it's not even a case about whether or not if defendant will produce the tax map in the requested format. Defendant admits that it will do so. The question is under whose terms the defendant will produce the tax map. Frankly, it's either the defendant's self-imposed terms or must the defendant comply with all portions of the act. Plaintiff believes that the provisions of the Freedom of Information Act should apply across the board. Unfortunately, the lower court determined that the defendant had complied with the Freedom of Information Act and properly withheld the tax map under section 7.1.I, an exemption under the act. Plaintiff believes, in short, that the circuit court should be reversed for two reasons. One, the defendant failed to prove by clear and convincing evidence that the tax map is a computer geographic system. And second, even if this court were to find that the defendant did meet its burden to do so, the defendant has waived its ability to assert a statutory exemption due to its prior production of the tax map to other private entities. Mr. Craven, let me ask you this. Do you agree that this court should consider this FOIA request as from a commercial requester? Yes, Your Honor. Our client has recognized that he is a commercial requester. However, in short, that's not relevant to the analysis of whether or not this is a computer geographic system or not. I understand there are other portions of section 7.1.I that impact the analysis of if that exemption applies at all. But in short, this tax map is not a computer geographic system. And so step one of that exemption doesn't apply. We don't even have to get to the private gain or public loss analysis. Okay. So why would you believe we don't have to get to that analysis of private loss or gain? Because isn't that part of the exemption here? Yes, it is. And so you're absolutely right, Your Honor, that this could be decided on whether or not private gain or public loss has been established by clear and convincing evidence. Yes, this client, the plaintiff, the appellant is a commercial requester, but has private gain or public loss been established? Plaintiff doesn't believe that to be the case. The reason I say we don't have to get there is I'm considering section 7.1.I to have several elements, if you will. The first element is that the defendant, the appellee, has the burden of proving that the public record requested is a computer geographic system. Section 7.1.I lists several different topics that can be exempt. The only one pled is that this is a computer geographic system. Appellant's position is that the first question to be asked, therefore, is, is this tax map a computer geographic system? And our position is no. The language of the statute is clear. As this court's recognized, FOIA is not an overly complicated statutory system. It defines public records. It defines public bodies. It states that if a public body receives a request for public records, it provides a framework for when that public body must produce those records. It provides a framework for the cost that the public body may charge. And that's that. There are exemptions provided that the public body may withhold that otherwise public record from inspection or copying, but it does not exempt the record from the status of a public record. In other words, even if we were to say that this is this tax map is a computer geographic system. The defendant has the opportunity then upon that conclusion to withhold the tax map from production. But if it chooses to produce the tax map, as it admits, it willingly does so. Section 7 does not exempt the tax map from the rest of FOIA. It is still a public record. It is still a record that must be produced under the cost provisions of Section 6 and under the timing provisions of the rest of the act. And so by producing the tax map to others, this is jumping ahead to the waiver argument. The defendant waives its ability under the LIBOR standard to assert its statutory exemptions. Counsel, just to be clear, when you talk about it having been produced for others, are you talking about the individuals or corporations, entities that purchased the license? Is that what you're referring to? Correct, Your Honor. The defendant or the appellee either way has made it readily available that they have a cost recovery policy and a licensing agreement. And have admitted in their briefing that they've provided this exact data to others in the same requested format upon them signing the licensing agreement and the cost recovery policy. In short, the 2005 Attorney General opinion that plaintiff attached to his initial request before this lawsuit even began summarizes exactly why that shouldn't be allowed. The Attorney General goes through the analysis of assuming, arguendo, that a statutory exemption applies. May a public body then charge for access to public records not in compliance with the FOIA cost provisions? And she answered no, unapologetically and emphatically stated that that goes against every public policy that the act stands for. That the act stands for openness. It stands for the opportunity for the people going as far as saying it's the necessity for people to be able to check their government. By putting an extra cost burden, which in previous cases the courts have recognized is a substantial impediment to access, it prevents people from being able to fulfill their need as a public servant to fulfill their public duty of checking a government. So by providing access, Your Honor, that's my argument here is that by agreeing to provide access to others upon their own terms, the county's terms, they've waived their ability to a certain exemption now. They can't provide it to those that agree to sign a licensing agreement and pay thousands of dollars, but not agree to provide it to those that submit a FOIA request. Otherwise, you're skirting the mandates of FOIA that public records be provided. In my humble opinion, we don't need to get to the waiver analysis in this case to reach a conclusion. And I believe the circuit courts and its appellant's position, the circuit court erred in ruling that the tax map requested was a computer geographic system. And as a result, the circuit court can be reversed for that reason alone. As I stated, computer geographic system is not a ambiguous term. If one asks the question, is a tax map a computer geographic system, the question appears simple on its face. The defendant appears to argue otherwise that the term computer geographic system is ambiguous, and we should be able to look elsewhere to determine that the legislature really meant computer geographic systems and the data or files stored within it. Looking at the rest of the act as a whole, it's clear that the legislature could have done that, but chose not to. For example, in Section 7.1, Exemption B-5, the legislature delineates out specific things that are exempt from law enforcement agencies. It states that files, documents, and other data or databases maintained by law enforcement agencies may be withheld from inspection and copying. Here, the legislature chose not to include that type of list. It states that computer geographic systems are exempt from inspection and copying, not computer geographic systems, other data, and the files and documents. In looking at Section 7.1i further, the legislature uses the word data later in the exemption. If they wanted to say computer geographic systems and its data, they could have done so, but they chose not to. In looking at this argument further about the defendant's position that computer geographic systems and its data should be exempt, that may be what they're preaching, but according to the record, that's not what they're practicing. This can be seen from plaintiff's initial request to defendant again when it included a copy of a parcel printout with its initial request. Plaintiff, prior to making the request for the shapefile format, requested a single parcel printout from the defendant, and the GIS Department, no questions asked, printed that map and sent it to plaintiff in hardcopy format. That's on page C-13 of this record, included with plaintiff's original complaint with his original request. Notably, at the bottom of that printout, it indicates that the map was prepared by the GIS Department, the same GIS Department that's now asserting that the data within its computer geographic system should be exempt. But if the data isn't exempt in hardcopy format, why should it be exempt in shapefile format? In reality, it appears that the defendant isn't concerned about the data itself, it's concerned about the format of the data being produced, which the Supreme Court and this court's sister court have recognized on numerous occasions, is not what the act stands for. Mr. Craven, let me stop you there. I have a question. I hope I can word it correctly so that you understand it, because this stuff is kind of complicated for me, but is the county map you're requesting in shapefile format any different than the county map in the PDF format? If I may, I'll answer yes and no. Okay. Thanks. I hope that's helpful. Explain, please. So, I'll answer in the way of an analogy. In the Faygo v. IDOT case that we cite in our brief, in that case, the plaintiff, the requester, asked IDOT for an Excel spreadsheet of certain data points, and the department recognized that they maintained the data in an Excel spreadsheet, and they produced it to the plaintiff. I may be mixing up my terms, requester and plaintiff, but hopefully you're following me. The plaintiff, however, wanted the spreadsheet in an unlocked format. In an unlocked Excel, one can move the cells, manipulate the data, play with it as if it's an open spreadsheet, if you will. But the department produced it in a locked format, which the court described as more akin to a PDF, more like a still image, a printout that one could not use in the form in which the public body regularly maintained and utilized the data. I go through that very long answer to get to where we're at here is, yes, the data should be the same. It's the same map. But how does one utilize the map? It's in two different forms and fashions. The PDF is, you could have it as an atlas in your car, but you don't have the same functions and capabilities as you do with the shapefile format. And as the Supreme Court mentioned in AFSCME, that allowing a public body to dictate which format a public record is produced, regardless of if it's the same map or not, flies in the face of everything FOIA stands for. So while it may be the same file, just like it may have been in FACLBI. We're not just concerned about the file itself. We're concerned about the format and the functionalities of it as well. I hope that somewhat addresses your question of if it's the same map or not, and why we concern ourselves with the format. Well, I think I understand the yes part of your response, but I'm not clear on what the no part of your response is. In terms of the functionalities, I would say no, it's not the same map. You just explained, I think, Mr. Craven, that if you got it in the form that you have requested, did you say you would have the opportunity to change it and manipulate it? Yes, just to change it and manipulate it, just like the public body has the opportunity to do so on a day-to-day basis. Why would you want to do so? I'm not saying we would necessarily want to do so, and I'm not insinuating that our client or anyone else should manipulate public records to create some sort of story or lie. I'm simply articulating that the FOIA, the Act, stands for the proposition that if a request is made for a record maintained in an electronic format, that's the format in which it's supposed to be produced, according to Section 6A. The county does not contest that it maintains it in a shapefile or similar format, and under the Act, that's simply how it's supposed to be produced. Back in the day, if they maintained it with colored pencils and crayons, that's the format in which we would request it today. The idea that it may now be manipulated into an exempt status, when for years, decades, centuries, this tax map that's been required by counties throughout the state has historically been recognized as a public record, may now be exempt simply because the county decides to store it in a specific computer software, again, flies in the face of what FOIA stands for. I apologize for interrupting you. No. The court, when it talked about you should produce it in the format requested, that wasn't carte blanche. In other words, didn't they say that as long as it's not labor-intensive, that the cost isn't enormous? So there was some restriction. So it's not just automatic that you can get it in whatever format you want. The holder of that information can then make a decision as to how much it's going to take for us to put it in the format that they request. Isn't that correct? I would generally agree with you, Your Honor. Yes, there are provisions within the act that say if a response to a request is going to be unduly burdensome, the public body has the opportunity under the act to assert that and describe why it will be so. But that's not what we have here. The defendant has not asserted that producing the public record in the shapefile format would be unduly burdensome. It's not said that it would be an unduly cost. It simply said that it's a public or a computer geographic system and asserted Section 7.1.I. So in sum, they had the opportunity to perhaps do so, but did not do so here. In similar counties throughout the state, our clients provided an affidavit that was attached to our motion for summary judgment that explains counties throughout the state have produced this map in the same format at no cost or at $100 cost as Section 6 mandates under the act. It is not a situation where they're going out creating data. They're not having to produce some brand new product. It's simply producing the map in the format in which they maintain it. Sorry, I temporarily lost my train of thought there. Does the county dispute your affidavit that there are other counties producing this in the format you're requesting, either for free or for the minimal cost of $100? If they do, I don't believe that refutation is in the record. It's an uncontested statement that's been attached from our client standpoint. However, there are many counties that make the records readily available online at no access and other counties, as our client attests to, has provided access upon a FOIA request. I see that my time is starting to run down, so I'll try to sum up in the point that allowing manipulation, while we may not have that fact pattern here, the reason we urge this court to recognize that the data within the computer geographic system should not be exempt, and not just reach an argument in our favor on the waiver issue, is the overarching public policy perspective. If this court were to hold that a public record, a tax map in a computer geographic system is exempt from production, and we don't have the situation where a county otherwise agrees to produce the record, so long as you sign a licensing agreement and comply with a cost recovery policy, the public is effectively denied access to that tax map as a whole. People have then found a way, if that type of holding is reached, to skirt the mandates of FOIA. It would simply not make sense to require a county to make a tax map for a public purpose, and then not allow the public to have access to it. It's for these reasons and everything I've articulated that we believe the Circuit Court erred in ruling in the defendant's favor for a motion for summary judgment, and request this court reverse its decision. Thank you, Counsel. You'll have time in rebuttal. Ms. May, you may proceed. Thank you. Good afternoon. Not only does the plain language of the Act demonstrate that this shapefile is exempt, but if there were any question with respect to the language in the statute, the legislative history with respect to the enactment of Exemption 7-1i is clear. The legislature intended it to apply to the type of data that Mr. Hurlburt requested from the county in this case. 7-1i applies to computer geographic systems, designs, drawings, and research data obtained or produced by any public body when disclosure could reasonably be expected to produce private gain or public loss. And the county submits that we have satisfied both parts of that exemption. Namely, this is data that is part of a computer geographic system, which is exempt, and Mr. Hurlburt, by readily conceding that he is a commercial requester, it is reasonable for the county to presume in this case that by disclosing this data that he would realize private gain. Ms. May, let me ask you this, just so that I'm clear. The research data that is requested here in this FOIA, it has been produced in the shapefile format in the past, has it not? It has not been produced pursuant to FOIA. It has been produced in distributors, is that correct? It has been produced pursuant to a licensing agreement where someone will agree to pay a fee, but they also, in the agreement, promise that they are not going to redistribute or reproduce the data. So the disclosure is limited by the terms of the licensing agreement. It's not the type of disclosure where when you get a document under FOIA, you can do whatever you want with it. The licensing agreement restricts the use of the data to the licensee. And Ms. May, has it also been produced in the PDF format? There have been tax maps produced in PDF. We don't dispute that prior to receiving this FOIA request, Mr. Hurlburt asked for a tax map with respect to one parcel in the county, and he was given a PDF. But a PDF is very different than a shapefile. A PDF is akin to a snapshot of a piece of data from a system like this, and it does not have, as Mr. Craven explained, the functionality element. And that's important because data as shapefiles can then be taken by requesters like Mr. Hurlburt and repurposed and sold to his clients. And when we look at the legislative history behind Exemption 7-1i, it becomes clear that that is the reason why the legislature chose to incorporate this exemption into FOIA. In the record is the transcript from the March 21st. But I want to stay on this same area because the data that is requested, so in other words, I get that PDF is different than the shapefile format. But isn't the data that's in that, in both of those files, if it's exempt under one, why wouldn't it be exempt under the other and vice versa? If it's not exempt for a PDF submission, why, and for the ones you said where you have a licensing provision and agreement, why would it be exempt in this case? The data in shapefile format is different than a PDF. A PDF is just a picture of what the system produces, if you will. It takes data points from an electronic database and packages them as a picture. And that is what Mr. Hurlburt got. The data itself, however, has much more functionality and can be manipulated and stacked with other data. And it is valuable in the sense that then businesses like Sage Information Systems can use that and repurpose it and sell it in various forms to its purchasers. So there is a difference. This PDF is one little snapshot of the data, but it is not the data itself. Okay. So if I'm hearing you correctly, because you have given this under licensing agreement, then the gist of your denial or the denial here of your client is because they don't have a licensing agreement. So it's the portion that talked about profit in the statute that you're relying on primarily in this case. Well, in this case, we're relying on the fact that the data requested is part and parcel of a computer geographic system. That's point one. But point two is that Mr. Hurlburt would be expected to realize private gain if we gave him this information pursuant to FOIA. So really, it's both elements. And I just wanted to get back to a moment to the legislative history. I think it's very clear in the record, the March 29, 2001 transcript from legislative hearings on this exemption, Representative Hultgren was asked for a definition of the term computer geographic system. And he said it's a term used to describe an organized collection of computer hardware, software, and graphic data designed to display all forms of geographically referenced information. He went on to say that it could also be described as a base layer of aerial photography, on which any combination of streets, rail networks and parcel boundaries could be overlaid. So that definition tells us what the legislature was thinking, and they were thinking that shape files like this, like Mr. Hurlburt requested, should be exempt. And when they talk about why, they say, well, public dollars are being used to create these very complicated systems to the tune of hundreds of thousands of dollars. And then you get commercial entities like SAGE, basically building their business on the back of the taxpayers by getting this information, if they were able to get it for very limited amount of money under FOIA, they can then profit from it. And the legislature was seeking to prohibit that from occurring by enacting Exemption 7.1i. Ms. May, I have a question for you. What should this court think about the fact that other counties are providing this information in the format requested, assuming that you don't dispute the affidavit submitted by plaintiff? I don't have personal information to say whether that's true or not, and it's not in the record whether other counties are doing that. And I would submit that it doesn't matter to this court's analysis, because when a public body received a FOIA request, they're not required to hold back data just because it's exempt under FOIA. They have the choice whether to hold it back or not. So some counties may make that choice and say, we're going to allow it. Other counties, like Joe Davis County, decide, no, we've spent a lot of our taxpayers' hard-earned money in creating this system, and we're not going to release it, and we're going to rely on this exemption, which we have the right to rely on, to hold it back. So I would submit that what other counties do or don't do with respect to this exemption really doesn't matter to the court's analysis, because public bodies always have the right to decide whether or not to assert an exemption or not. You're not required to, but you are permitted to if it is in the FOIA statute. I understand your point about this information was acquired using taxpayer money, but it doesn't cost the taxpayer any more money to provide it to someone else. I know you have other reasons, but making that statement makes it sound like it's going to cost more. They're building their business on the back of the taxpayer. The taxpayer has already spent the money. True, the investment's already been made. However, there is a significant cost in maintaining this system. It's in the record that Joe Davis County puts approximately $200,000 a year into this system. The statute doesn't require us to show public loss. It's written in the disjunctive. It says we need to show it's reasonably expected to result in private gain or public loss. Under the words of the statute, we only need to show one part of that equation, and it's undisputed here that Mr. Hurlburt requested this data for a commercial purpose. That part of the exemption has been satisfied. We skipped over, I think, an important part of the wording of the statute is the word system. Plain reading of that term, if you look at the dictionary, what does the word system mean? It's defined as a combination or arrangement as of parts, particulars, or elements into a whole, and that's what this data file is. It is part of a computer geographic system. We've submitted the affidavit of our GIS director, Mr. Kratcha. It is part of the record, and he explains just that, that a shapefile is part of a computer geographic system. Mr. Hurlburt has not contested that in any way. They admit a data file is part of a CGS system. Their argument, however, is that, oh, well, this only applies to the entirety of the system and not to the data files within it. I submit that that is not a plain reading of the word CGS system because the system is comprised of its parts, including the data that is part of it. And, you know, going further into the exemption 7-1-I, not only is a computer geographic system listed as one of the exempt items, but also research data. Both are listed there in the plain language of the statute. So I would submit that there is no question that this file requested was exempt as part of a computer geographic system. Mr. Hurlburt has conceded he's a commercial requester, so we have satisfied the private gain element, and we have the right to assert this exemption. You know, with respect to the waiver argument, plaintiff relies heavily on the Lieber case, and that case in very recent years has been limited to its facts. And very recently, the Illinois Supreme Court in the Mancini case was faced with a similar argument about waiver. Namely, in that case, a public body was, when it was responding to FOIA requests for crash reports from the public, was redacting the private information in those reports. But the public body was then also providing the crash reports to LexisNexis with no redaction. LexisNexis would then sell those crash reports to people who bought them, and it would then give part of that fee that it received back to the public body. The Supreme Court, the Illinois Supreme Court, looked at that and looked at that in the context of whether that was a waiver of the right to assert an exemption under FOIA, and the court said no, that's not a waiver. The court said the fee recovery part of that from LexisNexis had no bearing on the analysis. So I would submit in this case, we have to look at that Mancini case and how the Illinois Supreme Court would look at this, and that gives us a clear indication that just because the county engages in licensing of this data for a fee with the promise not to redistribute or reproduce it, that does not bear on the analysis here of whether we can assert this exemption. The Supreme Court has held that in Mancini. So the Lieber case has really been significantly limited to its facts in recent years, and it does not stand for the overarching principle that plaintiff is suggesting here, that by licensing this data with the promise not to reproduce or redistribute it, that we then waive our right to deny a FOIA request for shapefiles. I would also point out that in 2010, Joe Davis County received a nearly identical request for shapefile data from its GIS system, which it denied, and the requester then went to the Illinois Attorney General, their public access counselor, to request review of that FOIA denial. And the public access counselor agreed with Joe Davis County that the GIS shapefiles that were requested were in fact exempt under Section 7-1i. So that shows that the county's position here, that this data is part of a GIS system and is exempt. The AG's office agrees with us on that point and has given Joe Davis County an opinion on that back in 2010. I would also just respond to plaintiff's argument with respect to, he cited a line of cases that the location of a record is not determinative of whether it's exempt or not. And he cited three cases that dealt with records that were contained in a personnel file, and there previously had been an exemption in FOIA for personnel files, but the courts in those cases held that well, just because a record is in a personnel file, it might still be subject to FOIA. None of those cases dealt with Exemption 7-1i. And those cases do not bear on the court's analysis here, because 7-1i, by its own terms, indicates that location does matter. If the data is part of a CGS system, it is exempt under 7-1i. So the line of cases that plaintiff has cited with respect to location of records really has no application in the case of Exemption 7-1i. One more point on the waiver issue. There is another case that we cited in our brief, Chicago Alliance for Neighborhood Safety. That case also limited the LIBOR waiver rule, and it pointed out that that rule should not be mechanically applied. And in that case, there was a disclosure of some information regarding private citizens, and it was a disclosure pursuant to a confidentiality agreement. And in that case, it was not an unlimited disclosure, just as the cases here when we licensed the data, and therefore, waiver did not occur. Again, another situation where the disclosure was limited, as it would be with Joe Davis County and a licensing agreement, and the court held that there was no waiver in this case. So, in summary, we would submit that the county has shown by clear and convincing evidence that Exemption 7-1i does apply in this case, because the plaintiff requested data that was part of a CGS system and is a commercial requester, and we could reasonably expect he would incur some private gain from getting that data. And the waiver argument that plaintiff has advocated for should not be applied in this case, because the county's prior disclosures were limited and pursuant to a licensing agreement. So, we would ask that the lower courts granting summary judgment in favor of the county be upheld. Counsel, you've got about a minute left. I want to come back to a point I made earlier. I have asked both of you now the difference between the map requested in shape file format versus PDF format and what the difference is, and you both have indicated it's the quote functionality of those different maps. Could you clarify for me what you mean by functionality? Well, a PDF is just a piece of paper with a picture on it. So it shows you, you know, it could potentially show you the boundaries of a parcel of property, and that's it. You can't really do anything with it. It is produced from the GIS system. It is sort of like a part or a snapshot of the data that is then printed off on a Xerox machine. The data itself, though, is the underlying data that is used to show the geometry on that map. It is the points and lines and shapes that create, that are used, that are stored in the GIS system that when a certain request is made for a certain type of data, that PDF can be produced from that data. But the data is the underlying information that is used to then produce the picture that is the PDF document. Okay, thank you. Thank you. Thank you, Council. Mr. Craven, rebuttal. Thank you, Your Honor, and I apologize for the technological difficulties that I appear to have cut out there in the middle of Miss May's argument. Hopefully everyone can hear and see me okay again. I'd like to address a few brief points. Number one, Miss May just referenced there that the PDF is produced from the system, the computer geographic system. And that's, in sum, exactly what we're requesting from the shapefile format. We're requesting the data from the system. In short, it shouldn't matter if it's a PDF copy or a shapefile copy. A map is a map is a map is a map. And we're requesting just that, the map in shapefile format that happens to come from the system. Earlier in regards to the public loss comment, Your Honor referenced the concept that the county has been focusing on the amount of money it spent maintaining its GIS system. But correctly points out that money has already been spent. No one, plaintiff included, has forced the county to maintain its tax map in its GIS system. No one has forced the county to maintain a GIS system, period. If the county wanted to, it could get out its protractors and rulers and make a tax map on pen and paper. But there are all sorts of advantages to maintaining a tax map and other things with the GIS system. As the affidavit of the GIS director points out, you can analyze safety issues. You can put in pipelines and utilities. Plaintiff posits that that's an example of how the computer geographic system falls into the gambit of earlier language in Section 7. That if certain data in the computer geographic system should be exempt for safety purposes, for example, maybe under Pipeline Safety Act provision or needing to keep certain governmental routes for emergency plans off public record, those types of assertions can be made and those exemptions should be raised. But a per se rule that any public record stored in a computer geographic system should not be applied, specifically for the reasons articulated earlier that in some, a public body can then manipulate the status of a public record into an exempt public record. But nonetheless, that's not the fact pattern we have here. We have a public body that agrees to produce the public record just under its own terms. Appellant believes that those terms do not comply with the Act and still must, regardless of if someone submits a piece of paper titled FOIA request for the shapefile from the computer geographic system or says, can I have a computer geographic system file? FOIA makes clear that you don't need to have a specific form to accept the FOIA request. It can be an oral request. So the question remains, if someone calls into the GIS Department and does not use the magic words, this is a FOIA request, but is interested in retrieving the public record of the tax map and shapefile format, without the county having to assert a FOIA exemption, are they allowed to require a licensing agreement and assert their cost recovery policy provisions without the assertion of FOIA being involved just because a lay person doesn't use those terms? The answer should be no, and the public policy of the Act makes that clear. In sum, a waiver has occurred here, but it might not occur in other situations if this court were to broadly hold that all documents, all public records within a computer geographic system are per se exempt. We think the public policies of the Act are clear, and for that reason request the lower court's decision be reversed. Thank you, counsel, both of you for your arguments. We'll take this matter under advisement and await the readiness of our next case. Thank you.